IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MIGUEL TORRES (#M-51675), | ) | |
| | ) | |
| PLAINTIFF, | ) | CASE NO. 15 CV 11547 |
| | ) | |
| V. | ) | |
| | ) | JUDGE MARVIN E. ASPEN |
| WARDEN RANDY PFISTER, | ) | |
| | ) | |
| DEFENDANT. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.   Introduction**

Plaintiff Miguel Torres, an Illinois state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff claims that Defendant, former Stateville Warden Randy Pfister, violated Plaintiff's constitutional rights by subjecting him to cruel and unusual conditions of confinement, and by denying him equal protection.  This matter is before the Court for ruling on Defendant's motion for summary judgment.  Although advised of the opportunity to respond to the motion, *see* Minute Entry of June 14, 2017, Plaintiff has declined to file an opposing brief.  For the reasons stated in this the Memorandum Opinion and Order, Defendant's uncontested motion is granted.

**II.   Standards on a Motion for Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hanover Ins. Co. v. Northern Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014).  In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to

the non-moving party. *Weber v. Univ. Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). The Court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986)).

To survive summary judgment, the nonmoving party must make a sufficient showing of evidence for each essential element of his case on which he bears the burden at trial. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797-98 (7th Cir. 2017) (citing *Celotex*, 477 U.S. at 322-23). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 656 (7th Cir. 2014) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Johnson v. Manitowoc Cty.*, 635 F.3d 331, 334 (7th Cir. 2011) (quoting *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008)).

### III. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 (N.D. Ill.) governs the procedures for filing and responding to motions for summary judgment in this judicial district. "Under the Local Rules of the Northern District of Illinois, a party filing a motion for summary judgment under Fed. R. Civ. P. 56 must serve and file 'a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law.'" *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 (7th Cir. 2008) (citation omitted). The opposing party must then file "'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record,

and other supporting materials relied upon.'" *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (citing N.D. Ill. R. 56.1(b)(3)(B)); *Fabiyi v. McDonald's Corp.*, No. 11 CV 8085, 2014 WL 985415, at *1 (N.D. Ill. Mar. 13, 2014) (Kim, Mag. J.) (*aff'd* 595 F. App'x 621 (7th Cir. 2014)). The opposing party may also present a separate statement of additional facts that require the denial of summary judgment. *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008). A plaintiff's *pro se* status does not excuse him from complying with these rules. *Morrow v. Donahoe*, 564 F. App'x 859, 860 (7th Cir. 2014) (unpublished opinion) (citing *Pearle Vision, Inc. v. Romm,* 541 F.3d 751, 758 (7th Cir. 2008) (inter alia)).

If a party fails to respond to a L.R. 56.1 statement of uncontested facts, then those facts are deemed admitted to the extent they are supported by the evidence in the record. *Keeton v. Morningstar, Inc.,* 667 F.3d 877, 880 (7th Cir. 2012); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); L.R. 56.1(b)(3)(C) (N.D. Ill.) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."). However, a non-movant's failure to respond to a summary judgment motion, or failure to comply with L.R. 56.1, does not automatically result in judgment for the movant. *Keeton,* 667 F.3d at 884; *Love v. Rockford Illinois Mun. Police Dep't*, No. 08 CV 50254, 2013 WL 159246, at *1 (N.D. Ill. Jan. 15, 2013) (Reinhard, J.). The movant must still demonstrate that it is entitled to judgment as a matter of law. *Keeton,* 667 F.3d at 884; *Love*, 2013 WL 159246, at *1. And the Court still views all the facts asserted by the moving party in the light most favorable to the non-moving party, drawing all reasonable inferences in the non-movant's favor. *Keeton,* 667 F.3d at 884; *Love*, 2013 WL 159246, at *1.

Consistent with the Local Rules, Defendant filed a "Statement of Uncontested Facts" along with his motion for summary judgment. (R. 64.) Each substantive assertion of fact in

3

Defendant's Local Rule 56.1(a)(3) Statement is supported by evidentiary material in the record. Also in accordance with the Local Rules, Defendant filed and served on Plaintiff a Local Rule 56.2 Notice, which explained in detail the requirements of Local Rule 56.1. (R. 66.) The notice warned Plaintiff that a party's failure to controvert the facts as set forth in the moving party's statement results in those facts being deemed admitted. *See, e.g., Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). In view of Plaintiff's failure to respond to Defendant's motion for summary judgment, the Court finds that the following facts, all supported by the record, are undisputed for purposes of the summary judgment motion:

**IV.    Background**

Plaintiff is an Illinois state prisoner. https://www.illinois.gov/idoc/OFFENDER/Pages/InmateSearch.aspx (last visited August 4, 2017). Plaintiff was incarcerated at the Stateville Northern Reception and Classification Center ("NRC") at all times relevant to this lawsuit. (Deft L.R. 56.1 Statement of Facts, ¶ 7.) Plaintiff was housed at Stateville NRC from April 20, 2015, to February 8, 2016. (*Id.*)

Defendant Randy Pfister is Stateville's current warden. (*Id.*, ¶ 9.) Pfister became warden on November 12, 2015. (*Id.*)

Stateville NRC functions as "the major adult male intake and processing unit for the entire state." (*Id.*, ¶ 10.) Offenders are placed in reception status upon admission to the Illinois Department of Corrections ("IDOC"). (*Id.*, ¶ 11.) Inmates undergo a "screening and classification" process at NRC before they are transferred to an assigned correctional center. (*Id.*) The evaluation includes a review of available criminal, educational, and employment history, health care conditions, any other information deemed relevant to an inmate's placement. (*Id.*, ¶

12.) When inmates first arrive at NRC, correctional officials have yet to determine "many unknowns," including which offenders pose a threat to others, and who may face risk of harm. (*Id.*) Consequently, prisoners at NRC have limited movement and engage in limited interaction with others for the safety of both offenders and staff. (*Id.*)

With regard to Plaintiff specifically, correctional officials at Stateville NRC were aware that he had enemies at the Menard and Centralia Correctional Centers. (*Id.*, ¶ 13.)

While at Stateville NRC, Plaintiff was allowed to shower once a week. (*Id.*, ¶ 14.) The IDOC provided him with one, "fun-sized" bar of soap for each shower. (*Id.*, ¶ 15.)

Plaintiff was authorized to make at least one telephone call per week. (*Id.*, ¶ 16.) He was occasionally allowed to place additional telephone calls if other inmates happened to forfeit their phone time. (*Id.*, ¶ 17.)

Plaintiff was permitted to go outside to the yard for recreation once a week. (*Id.*, ¶ 18.) Depending on the weather, he would have access to the yard for two to four hours each time he went outside. (*Id.*, ¶ 19.)

Prison officials let Plaintiff make purchases at the commissary once per month. (*Id.*, ¶ 20.) He had a spending limit of $30.00. (*Id.*)

It was Plaintiff's understanding that he was supposed to be furnished with cleaning supplies once a week to clean his cell. (*Id.*, ¶ 21.) However, he asserts that he received cleaning supplies "probably … about five times" during the ten months he spent at Stateville NRC. (*Id.*) When Plaintiff did receive cleaning supplies, correctional officials gave him a broom, mop, disinfectant, and a toilet brush. (*Id.*, ¶ 22.)

While confined at Stateville NRC, Plaintiff was able to request materials from the law library. (*Id.*, ¶ 23.) He had the ability to request case law, motions, and other materials. (*Id.*) He was also permitted to go to the law library at least once. (*Id.*, ¶ 24.)

At some point during his incarceration at Stateville NRC, Plaintiff sent his counselor a request for a job assignment. (*Id.*, ¶ 25.) He never received a response to his request. (*Id.*)

For his first seven months at Stateville NRC, Plaintiff had a cellmate. (*Id.*, ¶ 27.)

On November 5, 2015, an intelligence officer interviewed Plaintiff. (*Id.*, ¶ 28.) Based on concerns about Plaintiff's safety and security, the officer recommended that Plaintiff be placed in a single cell at NRC. (*Id.*, ¶ 29.) Accordingly, Plaintiff was moved to a single cell on November 6, 2015. (*Id.*, ¶ 30.) Correctional officials neither placed Plaintiff in disciplinary segregation, nor changed his classification to disciplinary segregation status. (*Id.*, ¶ 31.)

Inmates who enter Stateville NRC receive an Offender Orientation Manual. (*Id.*, ¶ 32.) That manual outlines the grievance process. (*Id.*) Plaintiff signed a form acknowledging his receipt of the manual on April 20, 2015. (*Id.*, ¶ 33.)

Plaintiff filed grievances with his counselor concerning the conditions of his confinement at Stateville NRC. (*Id.*, ¶ 34.) However, this was the only step in the grievance process that Plaintiff pursued. (*Id.*, ¶ 35.)

Plaintiff never spoke to Defendant Pfister while incarcerated at Stateville NRC. (*Id.*, ¶ 36.) Plaintiff has sued Pfister because "[h]e's the warden. He runs the show." (*Id.*, ¶ 37.)

## V. Discussion

Even viewing the record in the light most favorable to Plaintiff, the Court finds that Defendant is entitled to judgment as a matter of law. Defendant has established that Plaintiff failed to finalize the grievance process before he commenced suit in federal court. And even if

Plaintiff did exhaust his administrative remedies, he has failed to make a triable showing that Defendant either discriminated against him, or subjected him to cruel and unusual conditions of confinement.

### A. PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES PRIOR TO BRINGING THIS LAWSUIT

Defendant has demonstrated that Plaintiff failed to pursue the IDOC's three-step grievance process before bringing suit. The Prison Litigation Reform Act of 1996 contains a comprehensive administrative exhaustion requirement. Under that statute, "[n]o action shall be brought with respect to prison conditions ... by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a); *see also Jones v. Bock*, 549 U.S. 199, 204 (2007); *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim under Section 1983." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999); *Howard v. Maselko*, No. 11 CV 9278, 2013 WL 1707955, at *2 (N.D. Ill. Apr. 19, 2013) (Kocoras, J.). Correctional officials bear the burden of pleading and proving failure to exhaust. *Maddox*, 655 F.3d at 720 (citing *Jones,* 549 U.S. at 212).

In order to satisfy the PLRA's exhaustion requirement, a prisoner "must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004). An inmate must comply with the rules established by the State with respect to the form, timeliness, and content of grievances. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-25 (7th Cir. 2002). "Administrative remedies have not been exhausted unless the inmate has given the process a chance to work and followed through with

administrative appeals." *Worthem v. Boyle*, 404 Fed. App'x 45, 46, 2010 WL 4683631, at *2 (7th Cir. Nov. 18, 2010) (unpublished opinion) (citing *Ford*, 362 F.3d at 398-400; *Dixon v. Page*, 291 F.3d 485, 490-91 (7th Cir. 2002)).

"The 'applicable procedural rules' that a prisoner must properly exhaust are defined not by the PLRA, but by the prison grievance process itself." *Maddox*, 655 F.3d at 721 (citing *Jones,* 549 U.S. at 218). In this circuit, the courts take a "strict compliance approach to exhaustion." *Maddox*, 655 F.3d at 720 (quoting *Dole v. Chandler,* 438 F.3d 804, 808 (7th Cir. 2006)). Thus, "[a] prisoner must properly use the prison's grievance process. If he or she fails to do so, the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Maddox*, 655 F.3d at 720 (quoting *Dole,* 438 F.3d at 804). If a prisoner fails to properly avail himself of the prison's or jail's grievance process, he may lose his right to sue. *Massey*, 196 F.3d at 733; *Howard*, 2013 WL 1707955, at *2; *see also* 20 Ill. Admin. Code §§ 504.800, *et seq.* (detailing grievance procedures); *Burrell v. Powers,* 431 F.3d 282, 284 (7th Cir. 2005) (likewise explaining the administrative exhaustion process).

In the instant case, Defendant states, without contradiction, that Plaintiff submitted a grievance (or grievances) to his counselor, but that he admittedly took no further action in connection with those grievances. Because Plaintiff failed to completely exhaust the three-step grievance process, the Court cannot consider his claims.

### B. THE RECORD DOES NOT SUPPORT A FINDING OF AN EIGHTH AMENDMENT VIOLATION

In the alternative, even if Plaintiff did exhaust administrative remedies (or the grievance process was somehow unavailable to him), he has failed to establish that there is a triable issue with respect to whether his living conditions violated his constitutional rights.

There is no evidence in the summary judgment record that Plaintiff endured cruel and unusual punishment. Incarcerated persons are entitled to confinement under humane conditions that satisfy "basic human needs." *Rice ex rel. Rice v. Corr. Med. Services*, 675 F.3d 650, 664 (7th Cir. 2012) (citations omitted). "The State must provide an inmate with a 'healthy, habitable environment.'" *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985) (citations omitted). The Eighth Amendment imposes a duty to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Rice*, 675 F.3d at 664.

A claim of constitutionally inadequate confinement requires a two-step analysis: (1) "whether the conditions at issue were sufficiently serious so that a prison official's act or omission result[ed] in the denial of the minimal civilized measure of life's necessities;" and (2) "whether prison officials acted with deliberate indifference to the conditions in question." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (internal quotation marks and citation omitted).

In the instant case, Defendant states, again without contradiction, that while at Stateville NRC, Plaintiff was allowed to shower weekly, and that the IDOC provided him with a weekly bar of soap. He was permitted to make weekly telephone calls. He was able to go outside once a week for exercise and recreation. He was given the opportunity to purchase sundries at the commissary. Plaintiff conceded that correctional officials also provided him with cleaning supplies (albeit sporadically).

Although Plaintiff described various deprivations in his amended complaint, he has not disputed Defendant's representations. Nor has Plaintiff suggested that he was denied any more essential needs, such as adequate food, clothing, shelter, or medical care. The Court is entitled to decide a motion for summary judgment based on the factual record outlined in the Local Rule 56.1 statements. *Perez v. Thorntons, Inc.*, 731 F.3d 699, 712 (7th Cir. 2013) (citation omitted);

*see also Cracco*, 559 F.3d at 632 ("Because of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, we have consistently upheld the district court's discretion to require strict compliance with those rules.") (citations omitted). The only evidence before the Court is that Stateville NRC officials treated Plaintiff humanely.

Defendant has also explained why inmates at Stateville NRC generally enjoy only limited movement, and have minimal interaction with each other. In addition to ensuring that inmates' basic needs are met, a "critical job of prison officials [is] to ensure security and safety within the prison walls." *Hammer v. Ashcroft*, 570 F.3d 798, 811 (7th Cir. 2009); *see also Wolff v. McDonnell*, 418 U.S. 539, 600 (1974) ("The concerns of prison officials in maintaining the security of the prison and of protecting the safety of [inmates] are real and important."). To be sure, correctional officials are subject to liability under 42 U.S.C. § 1983 if they fail to take reasonable steps to protect an inmate from a known risk of assault. *See, e.g., Dale v. Poston,* 548 F.3d 563, 569 (7th Cir. 2008); *Baird v. Hodge*, 605 F. App'x 568, 571 (7th Cir. 2015) (unpublished decision). Stateville NRC's primary purpose is to process new IDOC arrivals. It only makes sense to constrain inmate integration pending assessment of each inmate's particular security needs.

With respect to Plaintiff specifically, moreover, the record does not support a finding that he was denied equal protection or disciplined without due process. Plaintiff had no protected liberty interest in remaining in the general population. *See Isby v. Brown*, 856 F.3d 508, 524-25 (7th Cir. 2017); *Lekas v. Briley,* 405 F.3d 602, 607 (7th Cir. 2005). Prisoners generally do not have a liberty interest in avoiding brief periods of segregation, whether administrative or disciplinary. *See Sandin v. Conner*, 515 U.S. 472, 483-86 (1995); *Kervin v. Barnes*, 787 F.3d 833, 837 (7th Cir. 2015); *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009).

Discretionary segregation, meaning segregation "imposed for administrative, protective, or investigative purposes," does not implicate the Fourteenth Amendment. *Townsend,* 522 F.3d at 771-72. An inmate has no right to procedural due process before being moved to administrative segregation. *Smith v. Akpore*, No. 16-3608, 2017 WL 2367378, at *2 (7th Cir. May 31, 2017) (unpublished opinion) (citing *Wolff*, 418 U.S. at 564-66).

First, Plaintiff mischaracterizes his cell change. Defendant clarifies that Plaintiff was not placed in segregation at all; more precisely, the Intelligence Unit recommended his placement in a single cell. And the move was made for his protection. Plaintiff cannot reasonably argue that this precautionary measure was motivated by malice or discriminatory intent. As Plaintiff does not contest that he was moved to a single cell for his safety and security, the matter does not implicate the Constitution.

For the same reasons, Plaintiff is not entitled to relief in connection with his relatively lengthy stay at Stateville NRC. The nature of Plaintiff's conviction and the length of his sentence undoubtedly circumscribed the number of correctional institutions to which he could be assigned. The IDOC website reflects that he is serving a 30-year sentence for attempted murder, and a 6-year sentence for aggravated discharge of a firearm into an occupied vehicle. *See* https://www.illinois.gov/idoc/OFFENDER/Pages/InmateSearch.aspx (visited August 4, 2017). In addition, Plaintiff had known enemies at the Centralia and Menard Correctional Centers. What is more, the Intelligence Unit found that he was a target at Stateville. There are only four maximum security prisons in Illinois. *See* https://www.illinois.gov/idoc/facilities/Pages/default.aspx (last visited August 4, 2017). Given the limited placement options, coupled with threats to Plaintiff's safety, it is readily apparent why he had to wait longer than the typical prisoner to be assigned to a permanent facility. No reasonable trier of fact could find on the basis of this record that

placement decisions and delays stemmed from a desire to single Plaintiff out for mistreatment. Plaintiff's conditions-of-confinement and equal protection claims are without merit.

### C. THE NAMED DEFENDANT LACKED PERSONAL INVOLVEMENT

Finally, the Court can discern no basis for liability on the part of the sole named Defendant, even assuming (without finding) that Plaintiff's constitutional rights were violated. Plaintiff has adduced no evidence demonstrating Defendant's direct, personal involvement, as required by *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) (*inter alia*). Nor has Plaintiff shown that the alleged violations of his constitutional rights occurred at Defendant's direction or with his knowledge and consent. *Id.* at 833-34. Section 1983 is premised on the wrongdoer's personal responsibility; therefore, an individual cannot be held liable in a civil rights action unless he caused or participated in an alleged constitutional deprivation. *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012) (citations omitted).

The doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See, e.g., Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008). To be held liable under 42 U.S.C. § 1983, supervisors "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)).

In its threshold review order, the Court stated that Warden Pfister could conceivably be liable for "potentially systemic," rather than "clearly localized" problems. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1428-29 (7th Cir. 1996). However, the more fully developed record negates any inference of personal involvement. Defendant became warden in November 2015, toward the end of Plaintiff's stay at Stateville NRC. There is no evidence that Plaintiff ever spoke

to, wrote to, or submitted a grievance that would have reached Defendant. In fact, Defendant affirmatively states in his affidavit that he has no direct role in determining the parent correctional center of inmates transferring out of Stateville NRC. (Defendant's Exhibit C, Declaration of Randy Pfister, ¶ 8.) Rather, the Clinical Services Office coordinates with the Transfer Coordinator Office to make that decision.) Under the circumstances of this case, where Plaintiff has failed to offer any evidence showing that Defendant was personally involved in—or even aware of—the matters giving rise to this lawsuit, Warden Pfister cannot be held to answer for the conditions of Plaintiff's confinement.

In sum, in view of Plaintiff's failure to respond to Defendant's Statement of Facts, the Court finds that there is no genuine issue as to any material fact. Furthermore, Defendant has established that he is entitled to judgment as a matter of law. Even viewing the record in the light most favorable to Plaintiff, no reasonable person could find that Defendant violated his Plaintiff's constitutional rights. Accordingly, Defendant's unopposed motion for summary judgment is granted.

Final judgment will be entered in this case. If Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998); *Bentz v. Palmer*, No. 12 CV 1753, 2015 WL 1042932, at *5 (N.D. Ill. Mar. 5, 2015). If the appeal is found to be non-meritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he or she is in imminent danger of serious physical injury.

*Ibid.* If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court. *See* Fed. R. App. P. 24(a)(1).

Plaintiff need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Plaintiff wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

## V. Conclusion

For the foregoing reasons, Defendant's uncontested motion for summary judgment [#63] is granted. The Court instructs the Clerk to enter final judgment in favor of Defendant Pfister pursuant to Fed. R. Civ. P. 56. The status hearing previously scheduled for October 5, 2017, at 10:30 a.m. is vacated.

Date: August 7, 2017

                                                      Honorable Marvin E. Aspen
                                                      United States District Judge